**McElroy, Deutsch, Mulvaney & Carpenter, LLP**
225 Liberty Street, 36th Floor
New York, NY 10281
(212) 483-9490
*Attorneys for Plaintiff, Kadmon Corporation, LLC*

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KADMON CORPORATION, LLC,<br><br>Plaintiff<br><br>vs.<br><br>LIMITED LIABILITY COMPANY ONCON,<br><br>Defendant. | Civil Action no.   22-5271<br><br><br>**COMPLAINT** |

Plaintiff, Kadmon Corporation, LLC, by and through its attorneys, McElroy, Deutsch, Mulvaney & Carpenter, LLP, by way of Complaint against Defendant, Limited Liability Company Oncon, says:

## THE PARTIES

1.      Kadmon Corporation, LLC is a limited liability company organized and existing under the laws of the State of Delaware, with a principal place of business located at 450 East 29th Street, 5th Floor, New York, NY 10016.

2.      Kadmon is a biopharmaceutical company engaged in the development and commercialization of drugs that target the molecular mechanism of disease.

3.      Limited Liability Company Oncon is a company organized and existing under the laws of the Russian Federation with a principal place of business located at Oktyabrskaya ul. 13, Krasnogorsk City, Moscow Region 142402, Russian Federation.

4.    Oncon engages in the research and development, manufacture and sale of pharmaceutical products in Russia.

5.    Kadmon developed knowledge and techniques for the discovery of human monoclonal antibodies ("the Technology") and Oncon desired to develop pharmaceutical products using human monoclonal antibodies for commercialization in Russia.

6.    The Parties entered into a series of agreements pursuant to which Kadmon licensed the Technology to Oncon in exchange for various mutual promises, covenants, and other good and valuable consideration.

7.    The first agreement entered into by and between the Parties was the Collaboration and License Agreement, dated May 19, 2016.

8.    Pursuant to the Collaboration and License Agreement, Kadmon licensed the Technology to Oncon and Oncon agreed to pay royalties to Kadmon based on the net sales of products developed and sold by Oncon in Russia.

9.    The second agreement entered into by and between the Parties was the Master Cell Bank Development and Royalty Agreement, dated April 20, 2018.

10.    Pursuant to the Master Cell Bank Development and Royalty Agreement Kadmon agreed to engage a third party to develop a Master Cell Bank for use by Oncon in the development of a product that was similar to cetuximab (the "Biosimilar Product"). Oncon agreed to fund the development of the Master Cell Bank and to pay royalties to Kadmon based on a percentage of the net sales of the Biosimilar Product.

11.    The third and final agreement entered into by and between the Parties is entitled "Tripartite Master Services Agreement" and is dated June 17, 2020.

12.     Pursuant to the Tripartite Master Services Agreement, Kadmon agreed to engage the services of a third-party provider, WuXi Biologics to provide certain goods and services for the benefit of Oncon and to assist Oncon in the development of certain pharmaceutical products.

13.     Pursuant to the Tripartite Master Services Agreement Oncon, agreed to reimburse Kadmon for the cost of the services provided by WuXi and to pay a fee to Kadmon for its services related to the development of the pharmaceutical products.

14.     Despite its obligations under the Tripartite Master Services Agreement to reimburse Kadmon for the cost of all goods and services provided by WuXi and to pay a fee to Kadmon based on a percentage of the cost of the goods and services provided by WuXi, Oncon has failed to make the required payments and has failed to cure its breach of the Tripartite Master Services Agreement after receiving notice of its default and an opportunity to cure.

## JURISDICTION & VENUE

15.     The Tripartite Master Services Agreement states as follows:  "The laws of New York, USA, without giving effect to principles of conflict of laws, govern all matters relating to this Agreement and the enforcement thereof.  The Courts of New York, USA have exclusive jurisdiction over all matters relating to this Agreement and the enforcement thereof."

16.     The Master Cell Bank Development and Royalty Agreement contains the same choice-of-law and forum-selection provision as the Tripartite Master Services Agreement.

17.     The Collaboration and License Agreement contains a choice-of-law provision that requires application of New York law to all disputes under the agreement, but does not contain a forum-selection clause.

18.     The United States District Court for the Southern District of New York has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship

between Plaintiff and Defendant and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs within the meaning and intent of 28 U.S.C. § 1332.

19.    The United States District Court for the Southern District of New York has personal jurisdiction over the Defendant by virtue of the forum-selection clause contained in the Parties' Tripartite Master Services Agreement, pursuant to which Defendant consented to having all disputes under that agreement litigated in the courts of New York, USA.

20.    The United States District Court for the Southern District of New York also has personal jurisdiction over the Defendant because a significant portion of the events and transactions that form the basis of the claims asserted in this case occurred in the State of New York and because the Defendants have purposefully availed themselves of this jurisdiction such that this Court may properly exercise personal jurisdiction over them.

## FACTS COMMON TO ALL COUNTS

21.    Pursuant to the terms of the Tripartite Master Services Agreement, the Parties and WuXi Biologics executed Research Work Order WBP2128 (WO-01.KADMON-20200812), dated August 17, 2020 ("Work Order No. 1").

22.    Work Order No. 1 incorporated by reference all of the terms and conditions of the Tripartite Master Services Agreement, dated June 17, 2020.

23.    The Tripartite Master Services Agreement provides that each Research Work Order entered into by and between the Parties shall "automatically incorporate the terms and conditions" of the Tripartite Master Services Agreement and shall "be a separate and distinct agreement."

24.    Pursuant to Work Order No. 1, WuXi Biologics agreed to carry out the development and optimization of drug manufacturing according to the requirements of good manufacturing practices of KD035 for monoclonal antibodies for clinical trials sponsored by Oncon.

25.     Pursuant to Work Order No. 1, Kadmon agreed to pay WuXi Biologics an estimated total cost of $1,594,810 for the services described in the Research Work Order.

26.     Pursuant to the Tripartite Master Services Agreement, Oncon agreed to reimburse Kadmon for all amounts owed to WuXi Biologics pursuant to all Research Work Orders executed by the Parties, including Work Order No. 1, plus a service fee equal to 7% of the amount charged by WuXi biologics.

27.     The Tripartite Master Services Agreement provides as follows:

> 3.1     **Contract Price:**  Kadmon shall pay Provider [(WuXi)] the fees in the amount and manner provided in the applicable Work Order (the "**Contract Price**").  The Contract Price may be charged in accordance with a lump-sum or other pricing structure.  The Contract Price will include service fees and, if applicable, an estimate for pass-through and raw materials costs.  The cost of Kadmon's services is seven percent (7%) of the cost of the Provider's services.  Client [(Oncon)] shall pay Kadmon the fees in the amount and manner provided in the applicable Work Order (the "**Contract Price**") plus seven percent (7%) upon completion of the Work Order.

28.     WuXi completed the work described in Work Order No. 1 and Oncon received the benefit of that work.

29.     Pursuant to Work Order No. 1 Kadmon incurred $1,083,820 for the services completed by WuXi Biologics pursuant to Work Order No. 1.

30.     Pursuant to section 3.1 of the Tripartite Master Services Agreement and by invoice dated August 6, 2021, Kadmon requested payment from Oncon for the Contract Price plus 7%, an amount totaling $1,159,687.40.

31.     Pursuant to the terms of the Tripartite Master Services Agreement and Work Order No. 1, payment by Oncon to Kadmon was due on or before October 5, 2021.

32.     Oncon failed to make payment to Kadmon in satisfaction of Work Order No. 1 and

continues to be in default of its obligation to make payment to Kadmon in accordance with the terms of Work Order No. 1 and the Tripartite Master Services Agreement.

33.     Pursuant to the Tripartite Master Services Agreement, the Parties and WuXi Biologics executed Research Work Order WBP2128 (WO-02.KADMON-20200812A), dated September 23, 2020 ("Work Order No. 2").

34.     Work Order No. 2 incorporated by reference the terms and conditions of the Tripartite Master Services Agreement dated June 17, 2020.

35.     Pursuant to the terms of Work Order No. 2, WuXi Biologics continued the work described in Work Order No. 1 and carried out the scaling-up of the drug manufacturing according to the requirements of current good manufacturing practice of KD035 for monoclonal antibodies for clinical trials sponsored by Oncon.

36.     WuXi Biologics completed the work described in Work Order No. 2 and Oncon received the benefit of that work.

37.     Pursuant to Work Order No. 2, Kadmon incurred $4,535,972.18 for the goods and services provided to Oncon pursuant to Work Order No. 2.

38.     Pursuant to section 3.1 of the Tripartite Master Services Agreement, by invoice dated January 18, 2022, Kadmon requested payment from Oncon for the Contract Price plus 7%, an amount totaling $4,853,490.23.

39.     Pursuant to the terms of the Tripartite Master Services Agreement and Work Order No. 2, payment by Oncon to Kadmon was due on or before March 19, 2022.

40.      Oncon failed to make payment to Kadmon in satisfaction of Work Order No. 2 and continues to be in default of its obligation to make payment to Kadmon in accordance with the terms of Work Order No. 2 and the Tripartite Master Services Agreement.

41.    Pursuant to the Tripartite Master Services Agreement, the Parties and WuXi Biologics executed Research Work Order WBP2128 (WO-03.KADMON-20200921), dated September 23, 2020 ("Work Order No. 3").

42.    Work Order No. 3 incorporated by reference the terms and conditions of the Tripartite Master Services Agreement dated June 17, 2020.

43.    Pursuant to the terms of Work Order No. 3, WuXi Biologics continued the work described in Work Order No. 1 and carried out the scaling-up of the drug manufacturing according to the requirements of current good manufacturing practice of KD035 for monoclonal antibodies for clinical trials sponsored by Oncon.

44.    WuXi Biologics completed the work described in Work Order No. 3 and Oncon received the benefit of that work.

45.    Pursuant to Work Order No. 3, Kadmon incurred $608,481.01 for the services provided to Oncon pursuant to Work Order No. 3.

46.    Pursuant to section 3.1 of the Tripartite Master Services Agreement, by invoice dated March 30, 2022, Kadmon requested payment from Oncon for the Contract Price plus 7%, an amount totaling $651,074.68.

47.    Pursuant to the terms of the Tripartite Master Services Agreement and Work Order No. 3, payment by Oncon to Kadmon was due on or before May 28, 2022.

48.    Oncon failed to make payment to Kadmon in satisfaction of Work Order No. 3 and continues to be in default of its obligation to make payment to Kadmon in accordance with the terms of Work Order No. 3 and the Tripartite Master Services Agreement.

49.    By correspondence dated February 25, 2022, Kadmon notified Oncon of its default and failure to make payment pursuant to Work Orders Nos. 1 and 2 and the Tripartite Master

Services Agreement.

50.    Through its February 25, 2022, written notice of default, Kadmon advised Oncon that it had sixty (60) days to cure its default and make payment to Kadmon in accordance with Work Order Nos. 1 and 2 and further advised that the agreements would be terminated and judicial redress would be pursued if payment was not received.

51.    Kadmon's written notice further provided that no further work will be authorized by Kadmon for the benefit of Oncon unless and until all outstanding payments owed to Kadmon were made.

52.    By letter dated May 6, 2022, Kadmon, by and through its counsel, notified Oncon that it remained in default in respect of Work Order Nos. 1 and 2 and that payment on Work Order No. 3 was due on or before May 28, 2022.

53.    By letter dated May 6, 2022, Kadmon, by and through its counsel, notified Oncon that its failure to cure its default in respect of Work Order Nos. 1 and 2 constituted a material breach of the Parties' Agreements and terminated the Collaboration and License Agreement, the Master Cell Bank and Royalties Agreement, and the Tripartite Master Services Agreement effective immediately.

54.    Oncon failed to make payment on Work Order No. 3 and its failure to make payment of the amounts invoiced pursuant to Work Order No. 3 constitutes a material breach of the Parties' Agreements, including the Tripartite Master Services Agreement.

## COUNT I
(Breach of Contract)

55.    Kadmon repeats and reasserts each and every allegation set forth in paragraphs 1 through 54 of this Complaint as if set forth at length herein.

56.     Oncon agreed to make payment to Kadmon for the cost of work performed by WuXi Biologics pursuant to Work Order Nos. 1, 2, and 3, plus 7% of the amount charged by WuXi Biologics.

57.     WuXi Biologics completed the work and provided the goods and services described in Work Order Nos. 1, 2, and 3.

58.     Oncon received the benefit of the goods and services provided by WuXi biologics and has used those goods and services to its own benefit.

59.     Kadmon has incurred over $6,000,000 in fees for the goods and services described in Work Order Nos. 1, 2, and 3.

60.     Pursuant to the terms of the Tripartite Master Services Agreement and Work Order Nos. 1, 2, and 3, Oncon agreed that it would reimburse Kadmon for the cost of the goods and services provided to it by WuXi Biologics, plus pay Kadmon a fee of 7% of the cost of those services within sixty (60) days of the receipt of invoices for those amounts issued by Kadmon.

61.     Kadmon issued invoices dated August 6, 2021, January 18, 2022, and March 30, 2022, for all amounts due and owing under the terms of Work Order Nos. 1, 2, and 3, and the Tripartite Master Services Agreement.

62.     Oncon has failed to make payment to Kadmon as required by the Tripartite Master Services Agreement and Work Order Nos. 1, 2 and 3.

63.     Work Order Nos. 1, 2, and 3 constitute independent binding contracts.

64.     Invoice number 2000, dated January 18, 2022, was issued to Oncon on that date in the amount of $4,853,490.23, for goods and services provided to Oncon pursuant to Work Order No. 2 and called for payment on or before March 19, 2022.

65.     Oncon failed to make payment as required by Invoice number 2000 and Work Order No. 2.

66.     Invoice number 1187, dated August 6, 2021, was issued to Oncon on that date in the amount of $1,159,687.40, for goods and services provided to Oncon pursuant to Work Order No. 1 and called for payment on or before October 5, 2021.

67.     Oncon failed to make payment as required by Invoice number 1187 and Work Order No. 1.

68.     Invoice number 2002, dated March 30, 2022, was issued to Oncon on that date in the amount of $651,074.68, for goods and services provided to Oncon pursuant to Work Order No. 3 and called for payment on or before May 28, 2022.

69.     Oncon failed to make payment as required by Invoice number 2002 and Work Order No. 3.

70.     It is against equity and good conscience to allow Oncon to retain the benefit of the goods and services provide to it by WuXi Biologics and Kadmon without paying for those goods and services.

71.     Oncon's failure to make payment to Kadmon for the amounts invoiced by Kadmon pursuant to Work Order Nos. 1, 2, and 3 constitutes a breach of the Tripartite Master Services Agreement and Work Order Nos. 1, 2, and 3.

72.     As a result of Oncon's breach of the Parties' contracts Kadmon has suffered damages in excess of $6,000,000 plus interest.

**WHEREAS**, Kadmon Corporation, LLC hereby demands judgment against Defendant, Limited Liability Company Oncon, for all consequential damages suffered by Kadmon, which

exceed of $6,000,000, plus interest, attorney's fees and costs of suit, and such other relief as the Court deems just and proper.

## COUNT II
(Unjust Enrichment)

73.     Kadmon repeats and restates each and every allegation contained in paragraphs 1 through 72 of this Complaint, inclusive, as if set forth at length herein.

74.     Oncon has received the benefit of the goods and services, including the Technology provided by WuXi Biologics and Kadmon and has retained the benefit of those goods and services.

75.     Kadmon has incurred over $6,000,000 in fees for the goods and services provided to Oncon by WuXi Biologics for the benefit of Oncon.

76.     Oncon has wrongfully and without justification refused to pay for the work completed by WuXi Biologics, which work it has received and benefitted from.

77.     It is against equity and good conscience to allow Oncon to retain the benefit of the goods and services provided to it by WuXi Biologics without payment for those goods and services.

78.     Oncon has been unjustly enriched by receiving the benefit of goods and services from WuXi Biologics without paying for those goods and services.

79.     Kadmon has demanded the return of the Technology, including all vials delivered from the Master Cell Bank and all clinical trial data compiled by Oncon related to the Antibodies.

80.     Oncon has refused to return the vials delivered to Oncon from the Master Cell Bank or the clinical trial data compiled by Oncon related to the Antibodies.

81.     Kadmon is entitled to reimbursement for the cost of the goods and services provided to Oncon by WuXi Biologics, plus interest, along with the return of the vials delivered from the Master Cell Bank and the clinical trial data compiled by Oncon related to the Antibodies.

82.     Oncon has also benefited from the services provided by Kadmon in procuring and managing the completion of the goods and services provided by WuXi Biologics.

83.     Kadmon reasonably expected to be paid for the services it provided and to be reimbursed for the cost of the goods and services provided by WuXi Biologics for the benefit of Oncon.

84.     Oncon has wrongfully and without justification refused to pay Kadmon for the services Kadmon has provided to Oncon.

85.     As a result of Oncon's wrongful conduct and refusal to pay for the goods and services provided to it, Kadmon has been damaged in excess of $6,000,000 plus interest.

**WHEREAS**, Kadmon Corporation, LLC hereby demands judgment against Defendant, Limited Liability Company Oncon, for all consequential damages suffered by Kadmon, which exceed of $6,000,000, plus interest, attorney's fees and costs of suit, along with the return of the vials delivered to Oncon from the Master Cell Bank and all clinical trial data compiled by Oncon related to the Antibodies, and such other relief as the Court deems just and proper.

## COUNT III
### (Fraud)

86.     Kadmon repeats and restates each and every allegation contained in paragraphs 1 through 85 of the Complaint, inclusive, as if set forth at length herein.

87.     Oncon intentionally misrepresented to Kadmon that it was financially able to meet its payment obligations under the Parties' Agreements at the time the Parties negotiated and executed each of those agreements.

88.     At the time Oncon made these misrepresentations to Kadmon it knew that it did not have the financial resources to meet its payment obligations under the Parties' Agreements.

89.     Oncon made material misrepresentations to Kadmon that Oncon was financially able to meet its obligations in an effort to induce Kadmon to enter into each of the Parties' Agreements.

90.     Oncon made material misrepresentations to Kadmon about Oncon's financial ability to meet its payment obligations with the intent that Kadmon would rely on those misrepresentations.

91.     Kadmon reasonably relied on Oncon's representations about Oncon's ability to meet its financial payment obligations under the Parties' Agreements when it agreed to the terms of the Parties' Agreements.

92.     Based on Oncon's misrepresentations about its ability to meet its financial obligations under the Parties' Agreements, Kadmon incurred over $6,000,000 in fees for goods and services that directly benefited Oncon with the expectation that Kadmon would be reimbursed those costs.

93.     As a result of Oncon's fraudulent misrepresentations Kadmon has been damaged in excess of $6,000,000 in consequential damages, plus interest.

**WHEREAS**, Kadmon Corporation, LLC hereby demands judgment against Defendant, Limited Liability Company Oncon, for all consequential damages suffered by Kadmon, which exceed $6,000,000, plus interest, attorney's fees and costs of suit, and such other relief as the Court deems just and proper.

## COUNT IV
(Declaratory Judgment)

94.     Kadmon repeats and restates each and every allegation contained in paragraphs 1 through 93 of the Complaint, inclusive, as if set forth at length herein.

95.     By letter dated February 25, 2022, Kadmon advised Oncon that it would terminate the Agreements if Oncon did not cure its default and make payment to Kadmon as required by the Tripartite Master Services Agreement and Work Order Nos. 1, 2 and 3.

96.     By letter dated May 6, 2022, Kadmon formally terminated all three of the Parties' agreements effective immediately.

97.     Oncon's conduct as described in this Complaint constitutes a material breach of all of the Parties' Agreements, including the Collaboration and License Agreement, Master Cell Bank and Royalty Agreement, Tripartite Master Services Agreement, and Work Order Nos. 1, 2, and 3.

98.     Kadmon's written cancellation notice complied with the terms of all applicable agreements between the Parties and was a proper cancellation in light of Oncon's material breach of the Parties' Agreements.

99.     There is a real dispute and controversy between the Parties concerning Kadmon's right to terminate the Parties' Agreements and Oncon's breach of those Agreements.

100.    Kadmon is entitled to a declaratory judgment that the Parties' Agreements, including the Collaboration and License Agreement, Master Cell Bank and Royalty Agreement, Tripartite Master Services Agreement, and Work Order Nos. 1, 2, and 3 have been and are terminated and all licenses and obligations to share the Technology and information are terminated.

101.    Kadmon is further entitled to a declaratory judgment that the intellectual property rights to the Technology remain exclusively Kadmon's and that Oncon shall have no further right to use or benefit from the Technology.

**WHEREAS** Kadmon Corporation, LLC hereby demands judgment against Defendant, Limited Liability Company Oncon, for a declaratory judgment providing as follows:

1. The Parties' Agreements, including the Collaboration and License Agreement, Master Cell Bank and Royalty Agreement, Tripartite Master Services Agreement, and Work Order Nos. 1, 2, and 3 are hereby terminated;

2. All rights to the Technology shared and exchanged between to the Parties pursuant to the Agreements shall hereafter belong to Kadmon and Oncon shall have no further right to use or benefit from the use of the Technology; and

3. And for such other relief in law or equity as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Date: June 20, 2022
New York, New York

By: /s/ *Michael J. Marone*
Michael J. Marone, Esq.
McELROY, DEUTSCH, MULVANEY & CARPENTER LLP.
225 Liberty Street, 36th Floor
New York, New York 10281
212-483-9490
Attorneys for Plaintiff
*Kadmon Corporation, LLC*

15