```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
                                                               :
KADMON CORPORATION, LLC,                                       :
                                                               :
                           Plaintiff,                          :
                                                               :       22-cv-5271 (LJL)
              -v-                                              :
                                                               :       MEMORANDUM &
LIMITED LIABILITY COMPANY ONCON,                               :       ORDER
                                                               :
                           Defendant.                          :
                                                               :
---------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 03/03/2023

LEWIS J. LIMAN, United States District Judge:

Plaintiff Kadmon Corporation, LLC ("Plaintiff" or "Kadmon") moves, pursuant to Federal Rule of Civil Procedure 4(f)(3), for an order permitting it to make alternate service on Defendant Limited Liability Company Oncon ("Defendant" or "Oncon") of the summons, Dkt. No. 3 ("Summons"), and complaint, Dkt. No. 1 ("Complaint"), in Russia. Dkt. No. 13. Specifically, Plaintiff seeks to have the Court declare as effective under Rule 4(f)(3) service of the Summons and Complaint that Plaintiff's counsel made by delivering a copy of the Summons and Complaint (1) by email on June 30, 2022,[1] (2) by courier in July 2022, and (3) by private "informal service" in Russia on a person authorized to accept service of process on behalf of Defendant on October 14, 2022. *Id.* at 8, 11.

---

[1] There is a discrepancy in the Declaration of Richard J. Williams, Jr. as to whether the email was sent on June 23, 2022 or June 30, 2022. *Compare* Dkt. No. 13-2 ¶ 5 (suggesting the email was sent on June 30, 2022), *with id.* ¶ 6 (indicating that Defendant had actual notice on June 23, 2022) *and* Dkt. No. 13-1 at 9 (indicating that the email was sent on June 23, 2023). Because the only evidence offered by Plaintiff related to an email sent to Defendant is an email dated June 30, 2022, *see* Dkt. No. 13-2, Ex. C, the Court assumes that the email was sent on that date. This discrepancy, however, is of little import to Plaintiff's motion.

**BACKGROUND**

**I.     The Allegations of the Complaint**

The case grows out of a contractual relationship between Plaintiff, a United States biopharmaceutical company engaged in the development and commercialization of drugs that target the molecular mechanism of disease, and Defendant, a company organized and existing under the laws of the Russian Federation, engaged in the research, development, manufacture, and sale of pharmaceutical products in Russia.  Dkt. No. 15 ("Amended Complaint") ¶¶ 1, 3, 4, 6.  Plaintiff and Defendant are parties to three contracts pursuant to which Plaintiff licensed technology for the discovery of human monoclonal antibodies to Defendant: (1) a Collaboration and License Agreement, dated May 19, 2016; (2) a Master Cell Bank Development and Royalty Agreement, dated April 20, 2018; and (3) a Tripartite Master Services Agreement, dated June 17, 2020.  *Id.* ¶¶ 8–9, 11, 13.  Each of the agreements contains an identical choice-of-law and forum-selection provision, reflecting the agreement of the parties that New York law would govern all matters relating to the agreements and their enforcement and that the courts in New York would "have exclusive jurisdiction over all matters relating to [the agreements] and the enforcement thereof."  *Id.* ¶¶ 17–18.  The agreements do not designate an agent for service of process for the Defendant in the United States.

In 2020, pursuant to the Tripartite Master Services Agreement, Plaintiff agreed to engage the services of a third-party provider, WuXi Biologics ("WuXi"), to provide certain goods and services for Defendant and to assist Defendant in the development of certain pharmaceutical products.  *Id.* ¶¶ 14, 26–27, 35–36, 43–44.  Defendant agreed to reimburse Plaintiff for the cost of the services provided by WuXi and to pay a fee to Plaintiff for its services related to the development of the pharmaceutical products.  *Id.* ¶ 15.  Plaintiff alleges that despite those obligations under the Tripartite Master Services Agreement, Defendant has failed to make its

required payments and has failed to cure its breach after receiving notice of the default and an opportunity to cure. *Id.* ¶ 16. Plaintiff claims it is owed in excess of $6 million by Defendant. *Id.* ¶¶ 61, 74.

## II. Efforts at Service and Procedural History

The Complaint in this case was filed on June 22, 2022. Dkt. No. 1; Dkt. No. 13-2 ¶ 2. The Clerk of Court issued a summons the following day, June 23, 2022. Dkt. No. 3; Dkt. No. 13-2 ¶ 3. Defendant has notice of the action. By email dated June 30, 2022, counsel for Plaintiff forwarded a copy of the filed Summons and Complaint, along with a Waiver of Service, in both English and Russian. Dkt. No. 13-2 ¶ 5. Counsel also sent the same materials by DHL. *Id.* Counsel confirmed that Defendant received actual notice of the Summons and Complaint. *Id.* ¶ 6.

Efforts to formally serve Defendant have been more challenging. Plaintiff retained a process-server named DGR Legal ("DGR") to complete service of the Summons and Complaint through the 1965 Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638 ("Hague Convention" or "Convention"). Dkt. No. 13-2 ¶ 8; Dkt. No. 13-3 ¶ 3. However, service of process under the Hague Convention is not possible in Russia because, as of September 2022, all courier service companies that would deliver the request for service to the Central Authority, the Ministry of Justice of the Russian Federation, have ceased operations in Russia.[2] Dkt. No. 13-3 ¶ 4. Instead, DGR served Defendant through a private-process server. *Id.* ¶¶ 5–6. Specifically, a private-process server served English and Russian translation copies

---

[2] Service of process under the Hague Convention for U.S. parties has not been possible since at least July 2003, when Russia suspended judicial cooperation in civil matters with the United States. *See AMTO, LLC v. Bedford Asset Management, LLC*, 2015 WL 3457452, at *4 (S.D.N.Y. June 1, 2015).

3

of the Summons and Complaint by leaving a copy of the documents with a person authorized to accept service who refused to give his name. *Id.*, Ex. A.[3]

## DISCUSSION

"[B]efore a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum." *Omni Capital Intern., Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987). "[T]he procedural requirement of service of summons must be satisfied." *Id.*

The rules for serving a defendant with a summons in a federal action are set forth in Federal Rule of Civil Procedure 4. Federal Rule of Civil Procedure 4(h) addresses service of a foreign corporation, partnership, or association. It provides that "unless federal law provides otherwise or a defendant's waiver has been filed, a domestic or foreign corporation, partnership, or association must be served:

> (1) in a judicial district of the United States:
>
>> (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or
>>
>> (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires--by also mailing a copy of each to the defendant; or
>
> (2) at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i).

Fed. R. Civ. P. 4(h).

In turn, Fed. R. Civ. P. 4(f) states:

---

[3] The Complaint alleges that the Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332, but it failed to state the citizenship of the members of Plaintiff. Dkt. No. 1 ¶ 18. The Court issued an Order on February 1, 2023, directing Plaintiff to amend its Complaint to properly plead diversity jurisdiction or to show cause why this action should not be dismissed for lack of subject matter jurisdiction. Dkt. No. 14. Plaintiff filed an Amended Complaint on February 3, 2023, which properly pled diversity jurisdiction. *See* Dkt. No. 15 ¶¶ 2, 20.

SERVING AN INDIVIDUAL IN A FOREIGN COUNTRY. Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served at a place not within any judicial district of the United States:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>
>> (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
>>
>> (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
>>
>> (C) unless prohibited by the foreign country's law, by:
>>
>>> (i) delivering a copy of the summons and of the complaint to the individual personally; or
>>>
>>> (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
>
> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).

"Service pursuant to subsection (3) is 'neither a last resort nor extraordinary relief. It is merely one means among several which enables service of process on an international defendant.'" *Prediction Co LLC v. Rajgarhia*, 2010 WL 1050307, at *1 (S.D.N.Y. Mar. 22, 2010) (quoting *Rio Props. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002)); *see also Convergen Energy LLC v. Brooks*, 2020 WL 4038353, at *4 (S.D.N.Y. July 17, 2020); *F.T.C. v. Pecon Software Ltd.*, 2013 WL 4016272 at *3 (S.D.N.Y. Aug. 7, 2013). In determining whether to issue an order permitting alternative service under Federal Rule of Civil Procedure 4(f)(3), the Court engages in a three-part analysis of whether: (1) the proposed alternative method of service is prohibited by "federal law," Fed. R. Civ. P. 4(f); (2) the proposed method of service is "prohibited by international agreement," Fed. R. Civ. P. 4(f)(3); and (3) assuming that the first

two criteria are satisfied, the Court, in the exercise of its discretion, should permit alternative service. *See Pecon Software Ltd.*, 2013 WL 4016272 at *3; *S.E.C. v. Anticevic*, 2009 WL 361739, at *3–4 (S.D.N.Y. Feb. 13, 2009). Finally, the Court considers whether the proposed method of service is sufficient to satisfy constitutional due process under *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950). *See Aircraft Engine Lease Fin., Inc. v. Plus Ultra Lineas Aereas, S.A.*, 2021 WL 6621578, at *1 (S.D.N.Y. Apr. 23, 2021); *Convergen Energy LLC*, 2020 WL 4038353, at *3.

Russia is a party to the Hague Convention. "[C]ompliance with the Convention is mandatory in all cases to which it applies." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988). The Convention requires "each state to establish a central authority to receive requests for service of documents from other countries. Once a central authority receives a request in the proper form, it must serve the documents by a method prescribed by the internal law of the receiving state or by a method designated by the requester and compatible with that law." *Id.* at 699. The Hague Convention also "permits alternative methods of service unless the receiving country objects," including "service by diplomatic and consular agents, service through consular channels, service on judicial officers in the receiving country, and direct service 'by postal channels.'" *Smart Study Co. v. Acuteye-Us*, 2022 WL 2872297, at *7 (S.D.N.Y. July 21, 2022) (quoting *Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co.*, 480 F. Supp. 3d 977, 980 (N.D. Cal. 2020)). "[T]he Convention also permits countries to designate additional methods of service within their borders, either unilaterally or through side agreements with each other." *Facebook*, 480 F. Supp. 3d at 980. Finally, the Convention does not "apply if service can be completed without transmitting documents abroad (*e.g.*, if substitute service on a domestic agent of the defendant is valid under local law and completed)." *Id.* (cleaned up); *see also Burda*

*Media, Inc. v. Viertel*, 417 F.3d 292, 300 (2d Cir. 2005) ("The Hague Convention provides for several alternate methods of service: (1) service through the Central Authority of member states; (2) service through consular channels; (3) service by mail if the receiving state does not object; and (4) service pursuant to the internal laws of the state."). "As numerous courts have recognized, binding Supreme Court precedent indicates that the Hague Convention outlines specific methods of service, and that methods of service that are not specifically authorized are impermissible under the Convention." *Smart Study Co., Ltd.*, 2022 WL 2872297, at *7 (collecting cases); *see Water Splash, Inc. v. Menon*, 581 U.S. 271, 273 (2017) ("[T]he Hague Service Convention specifies certain approved methods of service and 'pre-empts inconsistent methods of service wherever it applies." (quoting *Schlunk*, 486 U.S. at 699)).

"Although Russia is a signatory to the Hague Convention, in July 2003, Russia unilaterally suspended all judicial cooperation with the United States in civil and commercial matters." *AMTO, LLC v. Bedford Asset Management, LLC*, 2015 WL 3457452, at *4 (S.D.N.Y. June 1, 2015) (quoting *Ambriz Trading Corp. v. URALSIB Fin. Corp.*, 2011 WL 5844115, at *6 (S.D.N.Y. Nov. 21, 2011)). "Before suspending judicial cooperation with the United States, Russia objected to Article 10 of the Hague Convention, which permits service by sending judicial documents through postal channels, directly to persons abroad, and Russia therefore does not permit service of documents by mail." *Todd Reed, Inc. v. Sergey Grishin Enterprises, LLC*, 2021 WL 5277442, at *2 (C.D. Cal. Apr. 6, 2021) (internal quotations marks and citations omitted); *see also LionHead Glob. No. 2, LLC v. Todd Reed, Inc.*, 2020 WL 4390389, at *2 (C.D. Cal. July 7, 2020) (same). "Russia's failure to abide by the Convention, . . . does not change the fact that Russia does not agree to service by mail." *AMTO LLC*, 2015 WL 3457452, at *7 (quoting *Kuklachev v. Gelfman*, 2008 WL 5068860, at *2 n.2 (E.D.N.Y. Nov. 24, 2008)).

Because of Russia's objection to Article 10, Rule 4(f)(3) does not permit service within Russia by email or through DHL courier service. Russia's objection to service by mail necessarily carries with it objection to service by email. The district court's logic in *Smart Study* is compelling: "*Water Splash* and *Schlunk* clarify that the [Hague] Convention is meant to set forth simple and certain methods of service that can be used to serve foreign litigants." 2022 WL 2872297, at *10. Thus, the fact that the Convention does not mention a particular method of service does not mean that such method is approved. *See id.* ("To infer that the Convention's silence as to a particular method equates to an implied permission to use virtually *any* method of service not proscribed by the Convention contravenes that purpose."). Russia's objection only to the methods specifically delineated in Article 10 (and not specifically to service by email) cannot be construed to reflect an agreement to permit service by email. *See id.* ("'There is no reason for a nation to affirmatively object to a service method that is not authorized or identified because the Convention specifies certain approved methods of service and pre-empts inconsistent methods of service wherever it applies.'" (quoting *Prem Sales, LLC v. Guangdong Chigo Heating & Ventilation Equipment Co., Ltd.*, 494 F. Supp. 3d 404, 416 (N.D. Tex. 2020))).

In addition, "[c]ourts have held . . . that service of documents by international courier constitutes service through 'postal channels,' and accordingly this method of service is insufficient in light of Russia's objection to Article 10." *AMTO, LLC*, 2015 WL 3457452, at *10 (citing *Advanced Aerofoil Techs, AG v. Todaro*, 2012 WL 299959, at *2 (S.D.N.Y. Jan. 31, 2012)); *see also Casio Computer Co., Ltd. v. Sayo*, 2000 WL 1877516, at *28 (S.D.N.Y. Oct. 13, 2000).

That leaves the question whether Plaintiff's private "informal service" in Russia on a person authorized to accept service of process on behalf of Defendant (*i.e.*, personal service)

should be deemed effective. Plaintiff relies on the second paragraph of Article 5 of the Hague Convention for the proposition that such method of service is effective. That paragraph states: "Subject to sub-paragraph (b) of the first paragraph of this Article, the document may always be served by delivery to an addressee who accepts it voluntarily." Hague Convention, Art. 5, ¶ 2. Plaintiff thus suggests that the Convention permits—and does not preclude—service on Defendant personally by its process server. Article 5 lists the three methods by which Central Authorities can effectuate service: formal service under the receiving state's internal laws; a method requested by the applicant, if such method is consistent with the laws of the receiving state; and informal delivery. 1 Bruno A. Ristau, International Judicial Assistance: Civil and Commercial § 4-3-1 (2000) [hereinafter, "International Judicial Assistance"]. "Article 5 is poorly organized . . . [and] has given rise to some confusion." *Id.* This confusion arises from the fact that the first two methods of delivery are listed under the paragraph that begins: "The Central Authority of the State addressed shall itself serve the document or shall arrange to have it served by an appropriate agency." Hague Convention, Art. 5, ¶ 1. By contrast, the third method (informal delivery) stands alone and is not directly limited by a requirement that such service be effectuated by a Central Authority—or an appropriate agency. *Id.* ¶ 2. Thus, in isolation, the second paragraph could be read to permit informal service by persons other than the Central Authority and those designated by the Central Authority. However, this reading of the Hague Convention is foreclosed by the text and structure of the Convention as a whole and evidence from a special commission tasked with reviewing the Hague Convention.

The central innovation of the Hague Convention was the establishment of Central Authorities in each signatory state to facilitate the process of effectuating service abroad. *See* 1 International Judicial Assistance § 4-1-1; Hague Convention, Art. 2. Articles 2 through 6 of the

Convention establish how Central Authorities function and interact with authorities in originating countries. Article 3, for example, permits only authorities and judicial officers of the state where the documents originate to forward requests to the Central Authority of the country where the party is to be served. *See* Hague Convention, Art. 3. Articles 8 through 10, in turn, establish alternative permissible means of service, if the contracting party consents. Article 10, Paragraph 1(a) and 1(c) lists the two alternative means of service available to interested parties in an action, assuming that the destination country "does not object": service by "postal channels" and service "through the judicial officers, officials or other competent persons of the State of destination." To read Article 5 such that informal service "to an addressee who accepts it voluntarily" is available to all interested parties, in addition to the Central Authority, as Plaintiff urges, would ignore the basic structure of the Convention; it would insert into Article 5 a provision—for service other than by Central Authority—that the Hague Convention addresses in Articles 8 through 10.

The text of Article 5 also supports the conclusion that only the Central Authority or an appropriate agency can effectuate service by delivering a document directly to an addressee. The third paragraph of Article 5 states: "If the document is to be served under the first paragraph above, the Central Authority may require the document to be written in, or translated into, the official language or one of the official languages of the State addressed." *Id.*, Art. 5, ¶ 3. The language suggests that a document to be served pursuant to the second paragraph of Article 5 must also be delivered to the Central Authority. Were it otherwise, the third paragraph of Article 5 would more logically be placed after the first paragraph and there would be no need to explicitly refer to documents served under the first paragraph. And, the final paragraph of Article 5 requires that "[t]hat part of the request, in the form attached to the present Convention,

10

which contains a summary of the document to be served shall also be served with the document." *Id.*, Art. 5, ¶ 4. This "request," which can only be sent by the authority or judicial officer of the originating country and not by a private party, *see id.*, Art. 3, must be addressed to the Central Authority of the receiving country, *see* Request for Service Abroad of Judicial or Extrajudicial Documents 1 (July 2017), available at https://www.hcch.net/en/publications-and-studies/details4/?pid=6560&dtid=65. And on the request, the applicant must select which of the three methods of delivery listed in Article 5 she would like the Central Authority to use. *Id.* Because there is nothing in Article 5 that would suggest that its final paragraph only applies to the first two methods of service, it follows that informal service can only be effectuated by a Central Authority. In short, reading Article 5 as an integrated whole, as this Court must, it is apparent that the second paragraph is not an exception to service made by and through the Central Authority but a means by which the Central Authority may effectuate service.

Additionally, service by informal delivery under paragraph 2 is only available "[s]ubject to sub-paragraph (b) of the first paragraph of this article." Hague Convention, Art. 5, ¶ 2. Sub-paragraph (b) provides that the Central Authority may serve the document "by a particular method requested by the applicant, unless such a method is incompatible with the law of the State addressed." *Id.*, Art. 5, ¶ 1(b). Thus, informal service is unavailable if the applicant has requested that a specific method of service be used. Under Plaintiff's reading of the Convention, the limiting clause becomes surplusage; if interested parties could independently effectuate service by informal delivery, there would be no need for the party to deliver a request to the Central Authority of the receiving country and thus there would be no need to subject paragraph 2 to the limitations of paragraph 1(b).

Finally, a report on the Special Commission on the Operation of the Convention ("Special Commission") makes clear that the method of informal delivery under Article 5 is only available to Central Authorities. The Special Commission met in November 1977 to review the operation of the Convention. *See* Permanent Bureau, Report on the Work of the Special Commission on the Operation of the Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters 2 (1977) [hereinafter, "Special Commission Report"]. The Special Commission Report addresses service by informal delivery in two places. First, the Special Commission Report reviews how informal service of process is used in signatory countries. *Id.* § 1.B.2.a. This discussion is in the section entitled "[e]ffecting service," which summarizes the "problems of effecting service through *the medium of the Central Authorities*." *Id.* § 1.B.2 (emphasis added). Second, the Special Commission Report describes additional areas for investigation, including "the methods which are or can be employed by the Central Authority in order to effect service of the document: description of the procedure for informal delivery." *Id.* § 2.3. Thus, the Special Commission Report, together with the text and structure of the Hague Convention, make clear that informal delivery under Article 5 of the Hague Convention is only available to Central Authorities, not to private parties seeking to serve others abroad.[4]

---

[4] Plaintiff's reading also would lead to an extraordinary result. In most civil-law countries, including Russia, only governmental officials can effectuate service of process. *See* Mary Kay Kane, *The Exercise of Jurisdiction over and Enforcement of Judgments Against Alien Defendants*, 39 HASTINGS L.J. 799, 855 (1988); Tatyana Gidirimski, *Service of United States Process in Russia under Rule 4(f) of the Federal Rules of Civil Procedure*, 10 PAC. RIM L. & POL'Y J. 691, 710 (2001) ("Although Russian law does not expressly forbid private service of foreign process, it is axiomatic that private service of process is not contemplated by the law. There is no evidence that Russia has ever recognized private service of foreign process by means other than through letters of request." (footnotes omitted)). But Plaintiff's interpretation would have it that a Convention—which otherwise is careful to respect the internal laws of the receiving state, *see, e.g.*, Hague Convention, Arts. 2, 3, 5, 8, 10—would permit a private citizen

12

The Court acknowledges that this logic leads to a result that may be considered untenable.  Service of process in Russia may be effected only by the Central Authority under Article 5, but Russia has declined to cooperate with the United States and, in any event, as of September 2022, all courier service companies that would deliver the request for service to the Central Authority, the Ministry of Justice of the Russian Federation, have ceased operations in Russia.[5]  Dkt. No. 13-3 ¶ 4.  But that is where the law leads.  Plaintiff must either identify an agent in the United States upon whom service may be effected or wait to prosecute its case until service can otherwise be effected.[6]

## CONCLUSION

Accordingly, Plaintiff's motion for alternate service is DENIED.  The Clerk of Court is respectfully directed to close Dkt. No. 13.

SO ORDERED.

Dated: March 3, 2023
       New York, New York

LEWIS J. LIMAN
United States District Judge

---

of the requesting state to effect service in any country party to the Hague Convention, regardless of the country's internal rules.  Such a reading would lead to a radical change in how service is effectuated in civil-law countries and would, in effect, make going through a Central Authority—the central innovation of the Hague Convention—entirely voluntary and in many cases unnecessary.

[5] The Court recognizes that confronted with the same or similar circumstances, a number of courts have permitted service by email.  See *Equipav S.A. Pavimentacao, Engenharia e Comercia Ltda. v. Bertin*, 2022 WL 2758417 (S.D.N.Y. July 14, 2022); *In re Bibox Grp. Holdings Sec. Litig.*, 2020 WL 4586819, at *5 (S.D.N.Y. Aug. 10, 2020); *Elsevier, Inc. v. Siew Yee Chew*, 287 F. Supp. 3d 374, 378 (S.D.N.Y. 2018); *Sulzer Mixpac AG v. Medenstar Indus. Co. Ltd.*, 312 F.R.D. 329, 331–32 (S.D.N.Y. 2015).  Those cases, however, stand in tension with *Smart Study*, and, if followed, would lead to an equally untenable conclusion:  They would permit service by email in all situations, even where the Central Authority can effect service.

[6] The time limits under Federal Rule of Civil Procedure 4(m) for service of process do not apply to service in a foreign country.  See Fed. R. Civ. P. 4(m).